1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

JOHN DOE,

Case No.  25-cv-03140-JSW

8

　　　　　Plaintiff,

**ORDER GRANTING MOTIONS FOR PRELIMINARY INJUNCTIONS AND SETTING CASE MANAGEMENT CONFERENCES**

9

　　　v.

10

DONALD J. TRUMP, et al.,

Re: Dkt. No. 9

11

　　　　　Defendants.

12

S.Y., *et al.*,

Case No. 25-cv-03244-JSW

13

　　　　　Plaintiffs,

Re: Dkt. No. 10

14

　　　v.

15

KRISTIN NOEM, *et al.*,

16

　　　　　Defendants.

17

ZHUOER CHEN, *et al.*,

18

　　　　　Plaintiffs,

Case No. 25-cv-03292-JSW

19

　　　v.

Re: Dkt. No. 7

20

KRISTI  NOEM, *et al.*,

21

　　　　　Defendants.

22

W.B.,

23

　　　　　Plaintiff,

Case No. 25-cv-03407-JSW

24

　　　v.

Re: Dkt. No. 8

25

KRISTI NOEM, *et al.*,

26

　　　　　Defendants.

27

28

1

1    J.C., *et al.*,

2                    Plaintiffs,

3        v.                                              Case No. 25-cv-03502-JSW

4    KRISTI NOEM, *et al.*,                              Re: Dkt. No. 9

5                    Defendants.

6

7

8        On May 14, 2025, the Court heard oral argument on motions filed by Plaintiffs seeking

9    preliminary injunctive relief against Donald J. Trump, in his official capacity as President of the

10   United States, Kristi Noem, in her official capacity as Secretary of the Department of Homeland

11   Security ("DHS"), Todd M. Lyons, in his official capacity as Acting Director of Immigration and

12   Customs Enforcement ("ICE"), and Moises Becerra, in his official capacity as Acting Field Office

13   Director of ICE's San Francisco Office of Detention and Removal.  At the conclusion of the

14   hearing, the Court granted the motions as to the Plaintiffs in these cases and took the issue of

15   whether it would issue nationwide relief under advisement.  This Order follows that hearing.

16       Plaintiffs are foreign nationals admitted to the United States through the Student Visitor

17   and Exchange Program ("SEVP"), which is overseen by ICE.  Plaintiffs were admitted on F-1

18   nonimmigrant visas for duration of status.  Records relating to Plaintiffs' immigration status are

19   contained in the Student and Exchange Visitor Information System ("SEVIS").  In early April,

20   Plaintiffs and thousands of other F-1 nonimmigrants across the United States learned their SEVIS

21   records had been changed from active to terminated for "otherwise failing to maintain status,"

22   which Plaintiffs argue rendered their presence in the United States unlawful.

23       Plaintiffs allege Defendants violated the Due Process clause of the United States

24   Constitution.  Lest any Defendant be unsure, that clause "applies to all 'persons' within the United

25   States, including aliens, whether their presence here is lawful, unlawful, temporary, or

26   permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *accord J.G.G. v. Trump*, 604 U.S. --,

27   145 S.Ct. 1003, 1006 (2025) ("It is well established that the Fifth Amendment entitles aliens to

28   due process of law in the context of removal proceedings.") (cleaned up).

United States District Court
Northern District of California

2

Plaintiffs also allege that Defendants violated the Administrative Procedure Act ("APA"), which "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (cleaned up).

Defendants, in turn, assert they are exercising their prerogative to administer provisions of the Immigration and Nationality Act ("INA") and its attendant regulations. *See, e.g., United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens ... is inherent in the executive power to control the foreign affairs of the nation.").

"The government of the United States has been emphatically termed a government of laws, and not of men." *Marbury v. Madison*, 5 U.S. 137, 163 (1803). The actions that give rise to Plaintiffs' claims reflect an instinct that has become prevalent in our society to effectuate change: move fast and break things. That instinct must be checked when it conflicts with established principles of law. If those charged with administering the laws are unwilling to do so, our system of checks and balances permits the judiciary to act.

After considering the parties' papers, relevant legal authority, the record in these cases, and oral argument, the Court does so here. For the reasons previously articulated on the record and for the herein, the Court GRANTS Plaintiffs' motions and modifies the terms of the injunction issued on May 14, 2025 as set forth below[1]

## BACKGROUND

**A.    Statutory and Regulatory Background.**

Under the INA, a foreign national with a Form I-20 from an academic institution approved by SEVP can be admitted on an F-1 visa to pursue their education as a "nonimmigrant." 8 U.S.C. § 1101(a)(15)(F); *see also* 8 C.F.R. §§ 214.1(a)(2) (designating category of visa), 214.2(f)(1)(i)(A) (presentation of Form I-20). F-1 nonimmigrants also are permitted to engage in curricular practical training ("CPT"), optional practical training ("OPT"), and OPT for science, technology, engineering, or mathematics degrees ("STEM-OPT"). *See* 8 C.F.R. § 214.2(f)(10)(i), (ii). Unlike

---

[1]    Because the Court bases its decision on Plaintiffs' APA claims, when it uses the term Defendants in this Order, the term does not include President Trump.

other visa holders, F-1 nonimmigrants are permitted to remain in the United States for "duration of status," *i.e.* the time they are "pursuing a full course of study at an educational institution certified by SEVP" or are "engaging in authorized practical training following completion of studies[.]"  8 C.F.R. § 214.2(f)(5)(i).

There are several ways an F-1 nonimmigrant could fail to maintain status.  For example, they may fail to make "normal progress toward completing a course of study" or their practical training.  *Id.*  They may also fail to maintain status if they engage in unauthorized employment, willfully fail to provide "full and truthful information requested by DHS," or have a conviction "in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)."  *Id.* § 214.1(e)-(g).

SEVP can terminate an F-1 nonimmigrant's status: "by the revocation of a waiver authorized on" the nonimmigrant's "behalf under section 212(d)(3) or (4) of the [INA]; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."  *Id.* § 214.1(d).  If an F-1 nonimmigrant fails to maintain status, they must either depart the country immediately or seek to have their status reinstated, which is not guaranteed.  8 C.F.R. §§ 214.2(f)(5)(iv), 214.16(i)-(ii).

Defendants created SEVIS under the auspices of 8 U.S.C. section 1372(a)(1), which required the development of "a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States" certain information about foreign nationals who have, or who apply for, F-1 status.  (*See also* Dkt. No. 29-1 (Declaration of Andre Watson dated Apr. 18, 2025 ("4/18 Watson Decl."), ¶¶ 1-4).)[2]  "SEVIS enables SEVP to assure proper reporting and record keeping by schools and exchange visitor programs, thereby ensuring data currency and integrity.  SEVIS also provides a

---

[2]    Unless otherwise noted, all docket references are to the docket in *Doe v. Trump*, 25-cv-3140.  The Court will refer to docket entries from other cases by the lead Plaintiff's name and the case number, *e.g.*, "*Chen* 25-cv-3292, Dkt. No. ___."

United States District Court
Northern District of California

1  mechanism for student and exchange visitor status violators to be identified so that appropriate

2  enforcement is taken (i.e., denial of admission, denial of benefits or removal from the United

3  States)."  https://www.ice.gov/sevis (last visited May 19, 2025).

4        Designated School Officials ("DSOs") are responsible for updating and maintaining an F-1

5  nonimmigrant's records in SEVIS.  Schools that sponsor F-1 nonimmigrants must use SEVIS to

6  obtain certification from ICE.  *See, e.g.*, 8 C.F.R. §§ 214.3(a)(1), (g)(1).  SEVP provides DSOs

7  with a list of permissible reasons to terminate a SEVIS record.  *See*

8  https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-

9  terminations/termination-reasons (last visited May 19, 2025).

10       One of those reasons, "Otherwise Failing to Maintain Status," should be used when an F-1

11  nonimmigrant has not maintained status and no other termination reason applies.  *Id.*  The DHS

12  website does not list that category as a reason SEVP can terminate a record ("SEVP-Only

13  terminations").  *Id.*  On or about April 9, 2025, DHS updated this portion of its website to add a

14  new category for SEVP-Only terminations entitled "Other."  *Id.*  DHS states this category should

15  be used by "[a] SEVIS adjudicator … when no other reasons apply."  *Id.*

16       Historically, if the State Department revoked an F-1 visa, Defendants did not rely on that

17  fact to terminate a SEVIS record.  In guidance issued on June 7, 2010, SEVP stated "[v]isa

18  revocation is not, in itself, a cause for termination of the student's SEVIS record."  (*Chen* 25-cv-

19  3292, Dkt. No. 7-1 at ECF pp. 8-10, Ex. 2 (ICE Policy Guidance 1004-04 – Visa Revocations at p.

20  3 (June 7, 2010)).)  Similarly, the State Department issued guidance that visa revocation based on

21  an arrest or conviction for driving under the influence or similar offense would not override

22  nonimmigrant status.  (*See id.* at ECF pp. 12-13, Ex. 3 (State Department Guidance Directive

23  2016-03, 9 [Foreign Affairs Manual ("FAM")] 403.11-3 Visa Revocation at 1).)

24  **B.    The Plaintiffs.**

25       Each Plaintiff in these cases was admitted to the United States on an F-1 visa and is

26  pursuing an undergraduate degree, a graduate degree, or is employed pursuant to OPT or STEM-

27  OPT.  Based on the dates their most recent F-1 visas were issued, none of Plaintiffs have engaged

28  in conduct that would cause them to fall out of status for the reasons set forth in 8 C.F.R. sections

United States District Court
Northern District of California

1    214.1(e) through 214.1(g).  Defendants also did not terminate them for reasons set forth in 8

2    C.F.R. section 214.1(d).

3         Rather, in early April of this year Defendants terminated Plaintiffs' SEVIS records and

4    terminated thousands of other F-1 nonimmigrants' SEVIS records as part of a "Student Criminal

5    Alien Initiative."  *See, e.g., Vyas v. Noem*, No. 3:25-cv-0261-RCC, 2025 WL 1351537, at *4 (S.D.

6    W.Va. May 8, 2025).  Andre Watson, the Senior Official within the National Security Division for

7    Homeland Security Investigations, explained this initiative in testimony before at least two other

8    courts.  (4/18 Watson Decl., ¶¶ 1, 2; Dkt. No. 67, Declaration of Johnny Sinodis, ¶ 3, Ex. B

9    (Transcript of Hearing in *Patel v. Lyons*, No. 25-cv-1096-ACR (D.D.C. Apr. 29, 2025) ("*Patel*")

10   ("*Patel* Tr.")); Dkt. No. 68-2, Defendants' Notice Ex. 1 (Transcript of Hearing in *Bushireddy v.*

11   *Lyons*, No. 25-cv-1102-SLS (D.D.C. May 5, 2025) ("*Bushireddy* Tr.")).)

12        DHS leadership instructed ICE to take "the population of nonimmigrant students studying

13   in the United States and run them through" the National Crime Information Center's ("NCIC")

14   database.  (*Patel* Tr. at 8:23-9:5; *see also Bushireddy* Tr. at 62:8-3.)  ICE ran just under 1.3 million

15   F and M visa holders through the NCIC database and got about 16,000 records that showed some

16   form of law enforcement contact ("a positive result").  After running further checks to make sure

17   the individual identified with a positive result was one of the F-1 visa holders on ICE's list, ICE

18   narrowed the list to 6,400 individuals.  Mr. Watson also testified that ICE looked at the nature of

19   the contact, whether there was a disposition if any charges were filed, and the nature of the

20   disposition.  (*Bushireddy* Tr. at 62:11-64:25, 65:12-14; *Patel* Tr. at 9:9-11, 11:15-22.)

21        ICE then forwarded lists of the individuals with positive results to the State Department for

22   its consideration as related to each F-1 nonimmigrant visa holder.  "The results that were returned

23   back to [ICE] by the [State Department] as to whether or not they revoked the visa or the visa had

24   expired … was then given to [ICE].  And based on the existence of derogatory information and the

25   request from the" State Department, ICE terminated the SEVIS records.  (*Bushireddy* Tr. at 66:8-

26   18; *see also Patel* 4/29 Tr. at 5:15-7:18, 11:13-21, 14:16-21; Dkt. No. 52-1, Declaration of Johnny

27   Sinodis, ¶ 2, Ex. A (*Patel* Administrative Record 023: Email string dated April 2, 2025 requesting

28   DHS terminate SEVIS status students without a valid visa because "there is no valid visa[] for us

to revoke and they were admitted under duration of status").)  According to the email from the *Patel* Administrative Record, after the State Department received these lists, it took approximately fifteen minutes to decide that all records in SEVIS relating to those names should be terminated. (*Id.*)

Except as noted herein, each Plaintiff in these cases has had some contact with law enforcement but does not have a conviction that would cause them to fail to maintain status under 8 C.F.R. section 214.1(g).  Y.W. does not have a criminal record, but they were deported in 2022 after leaving the United States and re-entering while in transit to another country.  (*S.Y.* 25-cv-3244, Dkt. No. 1, Compl. ¶¶ 59, 65.)  Thereafter, Y.W. reapplied for and was granted an F-1 visa and resumed their undergraduate studies.  (*Id.* ¶ 60.)

Mengcheng Yu also does not have a criminal record but unknowingly enrolled in a university set up by the federal government as a sting operation.  Pursuant to a settlement agreement, the government is barred from using her enrollment in that university as a basis for denying immigration benefits to her.  (*Chen* 25-cv-3292, Dkt. No. 7-7, Declaration of Mengcheng Yu ("Yu Decl."), ¶¶ 2-3, 5.)  Finally, J.C. does not have a criminal record.  In 2023, J.C. left the United States and attempted to return as a visitor.  A Customs and Border Protection Officer revoked their visa for failing to maintain status because they did not take the required number of academic credits.  J.C. voluntarily departed the United States and applied for and was granted a new F-1 visa in 2024.  (*J.C.* 25-cv-3502, Dkt. No. 1-1, Declaration of Zachary Nightingale ("Nightingale Decl."), ¶¶ 4-5, 8.)

Whether they had a criminal record or not, all Plaintiffs were given one of two reasons that their SEVIS record was terminated: (1) "Otherwise failing to maintain status.  Individual identified in a criminal records check and/or has had their visa revoked."; or (2) "Other.  Individual identified in a criminal records check and/or has had their visa revoked."

## C.    Procedural History.

Plaintiffs filed their complaints between April 7, 2025 and April 22, 2025 and simultaneously applied for temporary restraining orders ("TRO"), which were granted and set for a further hearing on April 25, 2025.  On April 25, 2025, Defendants abruptly reversed course.  At

1    the start of the hearing, Defendants' counsel announced that ICE had begun to reinstate SEVIS

2    records and would develop a new policy for terminating SEVIS records going forward.  Counsel

3    represented that Plaintiffs' records would remain active "[u]ntil such a policy is issued."  (*See,*

4    *e.g.,* Dkt. No. 47, Statement Regarding Reactivation of SEVIS Records ("Statement") at ¶¶ 1, 3.)

5         One day later, Defendants filed a notice stating ICE "has issued a new policy concerning

6    the termination of records in" SEVIS.  (Dkt. No. 51, Notice Regarding Policy ("Notice") at 2:3-4;

7    Dkt. No. 51-1, Broadcast Message: SEVIS Notice – Policy Regarding Termination of Record

8    ("New Policy").)  The New Policy includes a list of the reasons SEVP can terminate SEVIS

9    records.  (*Id.*)  That list includes two reasons that are not included on DHS's website: "Evidence of

10   a Failure to Comply with the Terms of Nonimmigrant Status Exists" and "U.S. Department of

11   State Visa Revocation (Effective Immediately)."  (*Id.* at 1; *see also id.* at 2 ("SEVP may terminate

12   the nonimmigrant's SEVIS record based on the visa revocation …, as such a revocation can serve

13   as a basis of removability under INA § 237(a)(1)(B).").)

14        At the hearing on the motions for preliminary injunctions, held May 14, 2025, Defendants

15   advised the Court of yet another new development.  Defendants represented that ICE is restoring

16   SEVIS records retroactively to the date the records were terminated.  Defendants also plan to send

17   letters to every individual impacted by the mass terminations, which counsel represented would

18   provide these individuals with documentation to explain the notations that remain in their SEVIS

19   records.

20        The Court will address additional facts as necessary in the analysis.

21                                    **ANALYSIS**

22   **A.    Applicable Legal Standard.**

23        A party "seeking a preliminary injunction must establish that [they are] likely to succeed

24   on the merits, that [they are] likely to suffer harm in the absence of preliminary relief, that the

25   balance of equities tips in [their] favor, and that an injunction is in the public interest."  *Winter v.*

26   *Nat. Res. Def. Council*, Inc., 555 U.S. 7, 20 (2008).  In *Alliance for the Wild Rockies v. Cottrell*,

27   the Ninth Circuit held that the "serious questions" sliding scale approach survives *Winter*.  632

28   F.3d 1127, 1134-35 (9th Cir. 2011).  Thus, "'serious questions going to the merits' and a balance

United States District Court
Northern District of California

1    of hardships that tips sharply towards the plaintiff can support issuance of a preliminary

2    injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and

3    that the injunction is in the public interest." *Id.* at 1135.

4         The APA provides that, "[o]n such conditions as may be required and to the extent

5    necessary to prevent irreparable injury, the reviewing court, …, may issue all necessary and

6    appropriate process to postpone the effective date of an agency action or to preserve status or

7    rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The relevant factors under

8    Section 705 "substantially overlap with the *Winter* factors for a preliminary injunction." *City and*

9    *Cnty. of San Francisco v. U.S. Customs & Immigr. Servs.*, 408 F. Supp. 3d 1057, 1078 (N.D. Cal.

10    2019).

11         Defendants argue that Plaintiffs are seeking a mandatory injunction. The Court does not

12    find this argument persuasive. "The status quo ante litem refers not simply to any situation before

13    the filing of a lawsuit, but instead to the last uncontested status which preceded the pending

14    controversy[.]" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). In these

15    cases, the last uncontested status preceding the litigation is the time before Defendants terminated

16    Plaintiffs' SEVIS records.

**B.    Terminating a SEVIS Record Effectively Terminates F-1 Status.**

18         Plaintiffs argue that terminating their SEVIS records terminates F-1 status, which governs

19    whether they are lawfully present in the United States. Defendants have argued that the

20    termination was merely a "red flag" and that terminating a SEVIS record has no impact on

21    immigration status. (*See, e.g.,* 4/18 Watson Decl. ¶ 10 ("Terminating a record in SEVIS does not

22    terminate an individual's nonimmigrant status in the United States. The statute and regulations do

23    not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record,

24    and SEVP has never claimed that it had terminated the Plaintiff's nonimmigrant statuses."); *see*

25    *also* Dkt. No. 62-2, Declaration of Michelle Young ("Young Decl."), ¶ 7 ("USCIS does not equate

26    SEVIS record termination with termination of an alien's F-1 nonimmigrant status.").)[3]

27    _____

28    [3]    Mr. Watson submitted the same or substantially similar declarations in cases across the
      United States. *See, e.g., Madan B K v. Noem*, No. 1:25-cv-419-JMB, 2025 WL 1318417, at *3

United States District Court
Northern District of California

Defendants' arguments on each of the *Winter* factors hinges on their position that a SEVIS record is not linked to immigration status. The Court joins the growing number of courts around the United States who have rejected this position. *See, e.g., Student Doe #1 v. Noem*, No. 25 C 4188, 2025 WL 1341711, at *6 (N.D. Ill. May 8, 2025) ("*Student Doe #1 – ND Ill.*") (stating "Defendants' argument appears to be all the more absurd because their own manuals and website contradict this position"); *Ortega Gonzalez v. Noem*, No. 6:25-cv-00622-MC, No. 2025 WL 1355272, at *5 n.7 (D. Or. May 9, 2025); *Vyas*, 2025 WL 1351357, at *6; *Isserdasani v. Noem*, No. 25-cv-283-WMC, 2025 WL 1330188, at *6-7 (W.D. Wis. May 7, 2025). Like other courts that have considered Defendants' position, "[t]he Court cannot blindly accept Defendants' current characterization of SEVIS termination and ignore the evidence before it." *Student Doe #1 – ND Ill.*, 2025 WL 1341711, at *10.

This evidence shows DHS advises the public that when a SEVIS record is terminated for failing to maintain status, an F-1 nonimmigrant:

- … loses all on- and/or off-campus employment authorization.

- … cannot re-enter the United States on the terminated SEVIS record.

- [ICE] agents may investigate to confirm the departure of the student.

- Any associated F-2 or M-2 dependent records are terminated.

*See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited May 19, 2025).

Similarly, Ms. Young's statements are contradicted by USCIS's representations in a Notice of Intent to Deny ("NOID") dated April 18, 2015, which states "the beneficiary's SEVIS record [shows] their F-1 nonimmigrant *status was terminated* on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa." (Dkt. No. 39-1, Declaration of Johnny Sinodis Decl., ¶ 2, Ex. A (NOID at 2 (emphasis added)).) Although it is not a party to these proceedings,

_____

(W.D. Mich. May 7, 2025); *Vyas*, 2025 WL 1351357, at *4; *Liu v. Noem*, -- F. Supp. 3d --, No. 25-cv-133-SE, 2025 WL 1233892, at *5 (D.N.H. Apr. 29, 2025); *Arizona Student Doe, #1 v. Trump, et al.*, No. 4:25-cv-00174-TUC-JGZ, 2025 WL 1192826, at *5 (D. Ariz. Apr. 24, 2025).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  the State Department describes a SEVIS record as "the definitive record of student or exchange

2  visitor *status* and visa eligibility."  9 FAM 402.5-4(B) (emphasis added), available at

3  https://fam.state.gov (last visited May 19, 2025).  All these representations provide ample

4  evidence that "DHS officials and agencies … construe a student's SEVIS record as the equivalent

5  of his actual F-1 student status."  *Liu*, 2025 WL 1233892, at *6; *see also Jie Fang v. Dir. of*

6  *Immigr. and Citizenship Servs.*, 935 F.3d 172, 177 (3rd Cir. 2019) (quoting letter from DHS

7  advising plaintiffs that because their "SEVIS record has been Terminated you no longer have valid

8  F-1 nonimmigrant status").

9      Plaintiffs also present evidence that SEVP-approved institutions construe an active SEVIS

10  record as an indication that an individual is "in status."  For example, W.B. was advised that

11  because her SEVIS record was terminated "your current I-20 (as well as any employment

12  eligibility) and your F1 status are no longer valid, and you should make plans to depart the U.S. as

13  soon as possible."  (*W.B.* 25-cv-3407, Dkt. No. 8-2, Declaration of Ben Loveman, ¶ 5, Ex. D at 2).

14  W.X. was advised that from their school's perspective, they "are no longer in valid F-1 student

15  status.  You will need to stop any OPT employment in which you are currently engaged."  (*S.Y.*

16  25-cv-3244, Dkt. 1, Nightingale Decl., Ex. O; *see also Chen* 25-cv-3292, Dkt. No. 7-8,

17  Declaration of Jiarong Ouyang Decl., Ex. A ("Based on the termination of your F-1 student status,

18  you no longer have valid work authorization and any employment you have must stop

19  immediately."); *W.B.* 25-cv-3407, Dkt. No. 16, Ex. I (Declaration of Brian Childs, ¶¶ 6, 27 (setting

20  forth DSOs' understanding of the consequences of terminating a SEVIS record for failing to

21  maintain status).)[4]

22      In sum, the Court concludes Defendants' argument that there is a distinction between

23  having an active SEVIS record and maintaining lawful F-1 status is unpersuasive and unsupported

24  by the record.  By terminating Plaintiffs' SEVIS records, Defendants altered Plaintiffs' legal status

25  within the United States.

26

27  [4]    Mr. Childs is a DSO at Western Michigan University and submitted his declaration in
28  *Madan B K, et al. v. Noem, et. al.  See, e.g., Madan B K*, 2025 WL 1318417, at *4.

**C.    Plaintiffs Meet Their Burden to Show the Likelihood of Irreparable Harm.**

Defendants argue the record is materially different than it was in mid-April when the Court granted the TROs and demonstrates Plaintiffs cannot show a likelihood of imminent irreparable harm.[5] *See, e.g., Lofton v. Verizon Wireless (VAW), LLC*, 586 F. App'x 420, 421 (9th Cir. 2014) (stating that although voluntary cessation of conduct may not moot a claim for injunctive relief, it may impact a showing of irreparable harm) (citing *TRW v. FTC*, 647 F.2d 942, 953 (9th Cir. 1981)).

Courts nationwide have split on whether Defendants' ameliorative efforts preclude a finding of irreparable harm. *Compare Badam v. Lyons*, No. 25-cv-1098-CJN, 2025 WL 1302026, at *2 (D.D.C. May 5, 2025) (finding no irreparable harm); *Doe v. Noem*, No. 2:25-cv-00633-DGE, 2025 WL 1397007, *4-5 (W.D. Wash. May 14, 2025) ("*Doe Wash.*") (same), *with Doe v. Noem*, No. 3:25-cv-00023-JHY, 2025 WL 1399216, at *11-13 (W.D. Va. May 14, 2025) (finding continued irreparable harm) ("*Doe – WD Va*"); *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1382930, at *7-9 (D. Mont. May 13, 2025) (same); *Ortega Gonzalez*, 2025 WL 1355272, at *5 (same); *Student Doe #1 v. Noem*, -- F. Supp. 3d --, No. 25-cv-2998 (KSH) (AME), 2025 WL 1348503, at *12-13 (D.N.J. May 8, 2025) ("*Student Doe #1 – DNJ*") (same). The Court finds the latter cases more persuasive.

The record before the court in *Student Doe #1 – DNJ* is nearly identical to the record here. 2025 WL 1348503, at *3-4. That court concluded the defendants' retroactive reinstatement of SEVIS records did not negate the plaintiffs' showing of irreparable harm. *Id.* at *12-13. The court reasoned the erroneous notation still existed in the plaintiffs' records. That fact and the "extraordinary way it came about" continued to impact the plaintiffs "in ways that are ongoing and cannot be fixed at the end of the case." *Id.* By way of example, the court cited the likelihood that the SEVIS terminations would make it more difficult for the plaintiffs to obtain a new visa or to

---

[5]    Defendants do not argue there is no longer a case or controversy for the Court to consider. The Court expresses no opinion on whether Defendants will be able meet their heavy burden to show their actions have rendered Plaintiffs' claims moot. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case.").

change their nonimmigrant status.  The court also found that reactivating the SEVIS records did not serve to remedy the fact that the plaintiffs' academic or professional progress had been interrupted.  *Id.*  The same is true for Plaintiffs here.

The Court also takes into consideration the fact that when Defendants initially started to reinstate SEVIS records, they took no position on whether the reinstatement would be retroactive. Defendants also represented the records would remain active only until a new policy was implemented.  (Dkt. No. 47, Notice, ¶¶ 1, 3.)[6]  One day later, SEVP sent the broadcast message with the New Policy, which expressly provides it "is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter."  (Dkt. No. 51-1, New Policy at 2.)  *See also Ortega Gonzalez*, 2025 WL 1355272 at *5 (stating although defendants may have "walked back" the terminations, "they have not repudiated the prior decisions").  The New Policy also does not cabin Defendants' ability to terminate SEVIS records to the three reasons identified in the relevant regulations.  *See* 8 C.F.R.§ 214.1(d); *see also Doe – WD Va*, 2025 WL 1399216, at *12 ("Because the termination reasons listed in the new policy are not exhaustive, … nothing prevents Defendants from immediately re-terminating Doe's SEVIS record based on the prudential revocation of his visa or some other reason that conflicts with the regulations governing F-1 status.").

For these reasons, the Court does not find it speculative to conclude that, in the absence of an injunction, Defendants would abruptly re-terminate SEVIS records without notice.  *See, e.g., Ortega Gonzalez*, 2025 WL 1355272, at *5 ("The termination of the Plaintiffs' SEVIS status presents as so arbitrary and capricious that the Court finds it impossible to trust that, absent an injunction, Defendants will not terminate Plaintiffs' student status yet again.").

The actions Defendants have taken since these cases were filed does not alter the Court's view of this factor.  Defendants have reactivated Plaintiffs' SEVIS records retroactively, but they

---

[6]     *See also* Zach Montague and Hamed Aleaziz, *U.S. Restores Legal Status for Many International Students, but Warns of Removals to Come*, N.Y. Times (Apr. 25, 2025) ("A senior [DHS] official, who spoke on condition of anonymity, said the students whose legal status was restored on Friday could still very well have it terminated in the future, along with their visas.").

United States District Court
Northern District of California

1   claim it is technologically impossible to both remove the fact of termination from those records

2   and to issue public-facing statements within SEVIS about the effect of the reactivation.  As noted

3   earlier, Defendants advised the Court they are in the process are sending letters to every F-1

4   nonimmigrant whose SEVIS record was terminated to address those concerns and to provide them

5   with supporting documentation.  The letter states "the effect of this retroactive activation is as

6   though the termination did not happen, and there are no 'gaps' or 'lapses' in your SEVIS record."

7   (Dkt. No. 68-2, Defendant's Notice Ex. 2 (sample letter).)  The letter contains no representations

8   that it will be binding on Defendants.[7]  The SEVIS record is "the definitive record of student or

9   exchange visitor status."  9 FAM 402.5-4(B).  Yet, the erroneous notations remain in Plaintiffs'

10  records.

11         Ms. Young, who attests to how USCIS would adjudicate a request for immigration benefits

12  in the face of these notations, does not unequivocally state there would be no adverse impact.  She

13  states only that the termination "would not, *per se*, have a negative impact on the benefit request's

14  adjudication."  (Young Decl., ¶ 11.)  Such equivocal language does not persuade the Court that

15  Defendants have rendered Plaintiffs' need for an injunction speculative or hypothetical.  *See*

16  *Student Doe #1 –DNJ*, 2025 1348503, at *13 (finding Young declaration and other submissions

17  "fail to undercut the record of ongoing and irreparable harm that Plaintiffs have marshalled").

18  Defendants also do not provide any meaningful argument to counter Plaintiffs' argument that they

19  cannot get back the time they lost on their work and their education because of the SEVIS

20  termination, which impacts their work and studies going forward.  (*See, e.g.*, *Chen* 25-cv-3292,

21  Dkt. 7-6, Declaration of Gexi Guo, ¶ 6 (discussing interruption of "time-sensitive and mission-

22  critical work for … public and private sector clients); Yu Decl., ¶ 7 (stating that at the time of

23  termination, Yu was conducting "research that was planned to continue into the summer").)

24         For these reasons, the Court concludes Plaintiffs have met their burden to show the

25

26  ───────────────────
    [7]      The Court acknowledges that Defendants included identical language in the stipulations for

27  dismissal filed in the other cases before the Court.  (*See*: 25-cv-3323, *Wang v. Noem*, Dkt. No. 33;
    25-cv-3383 *Kim v. Noem*, Dkt. No. 37; 25-cv-3475, *Qui v. Lyons*, Dkt. No. 42; 25-cv-3480 *He v.*

28  *Noem*, Dkt. No. 23; 25-cv-3481 *Bai v. Noem*, 25-cv-3549, Dkt. No. 38; and *Shah v. Lyons* 25-cv-
    3549 Dkt. No. 31.)

United States District Court
Northern District of California

1    likelihood of irreparable harm without an injunction.

2    **D.    Plaintiffs Show a Likelihood of Success on the Merits on their APA Claims.**

3        **1.    Plaintiffs Challenge a Final Agency Action.**

4        To obtain judicial review of their APA claims, Plaintiffs must challenge a "final agency

5    action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. An action is

6    considered final if it marks "the consummation of the agency's decisionmaking process -- it must

7    not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 178 (1997)

8    (cleaned up). The action also "must be one by which rights or obligations have been determined,

9    or from which legal consequences will flow." *Id.* at 178 (cleaned up).

10       In *Jie Fang*, the plaintiffs enrolled in the University of Northern New Jersey, which the

11   government had set up as part of a sting operation. 935 F.3d at 174. When the government

12   concluded its investigation, it notified the plaintiffs that their student status had been terminated.

13   *Id.* The plaintiffs brought claims under the APA, and the court concluded they challenged a final

14   agency action. *Id.* at 179-80. The court found "the second condition is clearly satisfied. The

15   termination order ended the student's legal status in the United States." *Id.* at 180. The evidence

16   cited above in Section B supports Plaintiffs' position that "significant consequences flow from the

17   termination of [Plaintiffs'] SEVIS records." *Liu*, 2025 WL 1233892, at *9; *see also Student Doe*

18   *#1 - DNJ*, 2025 WL 1341711, at *9; *Liu*, 2025 WL 1233892, at *5-7; *Isserdasani*, 2025 WL

19   1330188, at *6-7; *Jane Doe 1 v. Bondi*, No. 25-cv-1998-VMC, Dkt. No. 43, Preliminary

20   Injunction Order at 18-20 (N.D. Ga. May 2, 2025).

21       The *Jie Fang* court also concluded the decision to terminate the plaintiffs' SEVIS records

22   satisfied the first prong of the analysis, reasoning that "there is no statutory or regulatory

23   requirement that a student seek reinstatement" of status. 935 F.3d at 182. Even if a student were

24   to "pursue the administrative procedures for reinstatement, there is no mechanism to review the

25   propriety of the original termination order." *Id.* That reasoning applies equally to the Plaintiffs'

26   claims here, and Mr. Watson's description of the Student Criminal Alien Initiative further supports

27   a conclusion that Defendants' decision to terminate the SEVIS records was not tentative or

28   interlocutory in nature.

1          **2.**     **Plaintiffs Are Likely to Prevail on the Merits of the APA Claims.[8]**

2          The APA permits a court to "hold unlawful and set aside agency action, findings and

3   conclusions found to be - arbitrary, capricious, an abuse of discretion, or otherwise not in

4   accordance with law."  5 U.S.C. § 706(2)(A).  "The scope of review under the 'arbitrary and

5   capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."

6   *Motor Vehicle Mfr. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1989)

7   (cleaned up).  Even under the "narrow scope" of the arbitrary and capricious standard, an agency

8   "must examine the relevant data and articulate a satisfactory explanation for its action including a

9   rational connection between the facts found and the choice made."  *Id.* at 43.

10         In the record before the Court, Mr. Watson's testimony and the brief email exchange about

11  the Student Criminal Alien Initiative reflect the sum and substance of Defendants' reasons for

12  terminating Plaintiffs' SEVIS records.  Based on Mr. Watson's representations, the *only*

13  individualized assessment made was whether an individual identified who had a positive result in

14  the NCIC database was an individual listed within the SEVIS database.  Plaintiffs are likely to

15  prevail on their claim that the decision to terminate their SEVIS records was arbitrary and

16  capricious because the decision was not based on a "rational connection between the facts found

17  and the choice made."  *Id.* at 43; *see also Doe Wash.*, 2025 WL 1397007, at *1 ("Plaintiff has

18  established not only a 'likelihood' of success on the merits, but has made an *overwhelming*

19  showing on the merits of his" APA claim) (emphasis in original).  Because the record also shows

20  that Defendants did not rely on one of the three circumstances set forth in in 8 C.F.R. section

21  214.1(d) to terminate the SEVIS records, the Court also concludes Plaintiffs are likely to succeed

22  on the merits of their claim that Defendants' actions are contrary to law.  *See, e.g., Jie Fang*, 935

23  F.3d at 185 n.100 (noting section 214.1(d) limits DHS's ability to terminate status).

24  **E.**     **The Balance of Hardships and Public Interest Weigh in Favor of Plaintiffs.**

25         Where, as here, the government is a party the inquiry into the balance of hardships and the

26

27  [8]     In *Chen*, 25-cv-3292, Defendants initially argued the Privacy Act barred Plaintiffs' claims.
    (*Chen*, Dkt. No. 19 (Opp. Br. at 9:13-10:9).)  At the TRO hearing, Defendants disavowed that
28  argument.  Accordingly, the Court does not address it.

United States District Court
Northern District of California

1   public interest merges.  *See East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir.

2   2020).  Defendants argue these factors weigh in their favor because they have "significant

3   authority to administer and enforce the United States immigration laws, including those governing

4   the conditions of admissions of foreign students."  (Dkt. No. 29, Opp. Br. at 15:10-12.)  Relying

5   on 8 U.S.C. section 1372, Defendants also argue injunctive relief will "undermine DHS's

6   authority to enforce the provisions of the INA relating to the agency's ability to update and

7   maintain the information in SEVIS and, as such to change SEVIS record status to 'terminated' as

8   needed, in order to carry out the purpose of the program."  (*Id.* at 15:18-21).)

9        Defendants do not suggest that these individuals pose an immediate safety threat or that

10  they pose a threat to national security.  In contrast, Plaintiffs have shown that Defendants likely

11  exceeded their authority and acted arbitrarily and capriciously in those enforcement efforts, and

12  the "public interest is served by compliance with the APA."  *California v. Azar*, 911 F.3d 558, 581

13  (9th Cir. 2018).  Similarly, "there is no harm to the Government when a court prevents the

14  Government from engaging in unlawful practices."  *Castillo v. Barr*, 449 F. Supp. 3d 915, 923

15  (C.D. Cal. 2020).  For the reasons articulated in Section D, Plaintiffs have shown they have and

16  will continue to suffer significant hardship because of Defendants' actions.  Unlike the letter

17  Defendants intend to send, the relief the Court grants provides Plaintiffs with a measure of

18  stability and certainty that they will be able to continue their studies or their employment without

19  the threat of re-termination hanging over their heads.  *See Vyas*, 2025 WL 1351357, at *11 ("[T]he

20  public also has a strong interest in the F-1 student program that Congress created to invite foreign

21  students to study in the United States.").

22       Accordingly, the Court concludes the last two *Winter* factors weigh in Plaintiffs' favor.

23  **F.     The Scope of the Injunction**.

24       Defendants argue the Court has no authority to prevent Defendants from arresting,

25  incarcerating, or transferring the Plaintiffs outside the District pending resolution of the

26  proceedings, citing 8 U.S.C. sections 1252(g) and 1226(e).  The Court keeps its analysis to a

27  minimum because this too is an argument that has been consistently rejected by courts around the

28  country.  *See, e.g., John Doe – WD Va.*, 2025 WL 1399216, at *14-15; *Doe v. Noem*, No. 2:25-cv-

United States District Court
Northern District of California

01103-DAD-AC, 2025 WL 1134977, at *6-8 (E.D. Cal. Apr. 17, 2025) ("*Doe – ED Ca.*").

Because there are no material differences between the facts considered by those courts and the

facts here, the Court follows and adopts their reasoning.

In brief, Section 1252(g) should be interpreted narrowly and does not prevent a district

court from considering "a purely legal question that does not challenge the Attorney General's

discretionary authority." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).  "Here

the basis for the requested stay preventing removal is the arbitrary and capricious or unlawful

termination of [Plaintiffs'] SEVIS record[s], which is distinct from any potential decision to

initiate proceedings.  The same reasoning applies to [section] 1226(e) regarding detention." *Doe –

ED Ca.*, 2025 WL 1334977, at *7.  The Court concludes that Plaintiffs' "request to temporarily

stay detention and removal on the basis of the SEVIS termination is proper." *Id.* at *8 (and citing

cases reaching same conclusion).

The Court now turns to whether it should grant Plaintiffs' request for nationwide relief.  In

general, injunctive relief "should be no more burdensome to the defendant than necessary to

provide complete relief to the plaintiffs before the court. … However, there is no general

requirement that an injunction affect only the parties in the suit." *Garland*, 994 F.3d at 986

(cleaned up).  "Crafting a preliminary injunction is an exercise of discretion and judgment, often

dependent as much on the equities of a given case as the substance of the legal issues it presents."

*Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017).

In *Trump*, the Supreme Court addressed the government's request to stay nationwide

injunctions that barred enforcement of an Executive Order issued during President Trump's first

term.  That Executive Order suspended foreign nationals from six largely Muslim countries from

entering the United States.  *Id.* at 572-574.  The plaintiffs argued the Executive Order violated the

Establishment Clause and provisions of the INA.  *Id.* at 580-81.  The Supreme Court granted the

stay but only in part.  *Id.*

The Supreme Court stayed the injunctions "with respect to foreign nationals who lack any

bona fide relationship with a person or entity in the United States," because it concluded the

government's interest in preserving national security outweighed any harm that would come to

18

those individuals. *Id.* at 579. However, it upheld the injunctions to the extent they impacted the plaintiffs and individuals like them who had credible claims of bona fide relationships with foreign nationals seeking entry into the United States. *Id.* at 582. The Supreme Court reasoned that the plaintiffs and others like them had "sufficiently weighty" interests in maintaining those bona fide relationships. *Id.* at 580-81.

Here, Plaintiffs assert claims under the APA where universal relief is the norm. *See, e.g.*, *Garland*, 994 F.3d at 987 ("Section 706(2) does not tell a circuit court to 'set aside' unlawful agency action only within the geographic boundaries of that circuit."). These cases also implicate immigration policy and, thus, "have a particularly strong claim for uniform, nationwide relief." *Id.* The Court's conclusion that nationwide relief is appropriate also is guided by the fact that these cases and the litigation around the United States stem from the Student Criminal Alien Initiative. That initiative is a uniform policy that uniformly wreaked havoc not only on the lives of Plaintiffs here but on similarly situated F-1 nonimmigrants across the United States and continues do so. (*See, e.g., Chen*, 25-cv-3292, Dkt. No 7-4, Declaration of Keliang (Clay) Zhu, ¶¶ 2-6, Exs. A-JJ (declarations from similarly situated F-1 non-immigrants).) Unlike in the *Trump* case, there are no countervailing safety or security concerns that would require limiting the scope of the relief.

To the best of this Court's knowledge, this is the only case in which Plaintiffs have requested nationwide relief. The overwhelming majority of courts considering these cases have determined the plaintiffs are likely to succeed on the merits of the same claims presented here, even when they have concluded the plaintiffs were unlikely to show irreparable harm. The Court has determined Plaintiffs have met their burden to show a likelihood of irreparable harm and sees no rational distinction between the harms inflicted on the Plaintiffs before it and the harms inflicted on similarly situated individuals across the United States.

Finally, Defendants' actions since these cases were filed raise the concern that they may be trying to place any future SEVIS terminations beyond judicial review. At each turn in this and similar litigation across the nation, Defendants have abruptly changed course to satisfy courts' expressed concerns. It is unclear how this game of whack-a-mole will end unless Defendants are

19

United States District Court
Northern District of California

1    enjoined from skirting their own mandatory regulations.

2      For these reasons, the Court GRANTS Plaintiffs request for nationwide relief.

3    **G.**  **The Court Exercises Its Discretion to Waive a Bond.**

4      A "court may issue a preliminary injunction … only if the movant gives security in an

5    amount that the court considers proper to pay the costs and damages sustained by any party found

6    to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has discretion

7    "as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th

8    Cir. 2009) (internal quotation marks and citations omitted) (emphasis in original). Defendants ask

9    the Court to require a bond but do not suggest what amount would be appropriate. These cases

10    raise issues of public interest and the balance of equities weighs heavily in Plaintiffs' favor. In

11    these circumstances, the Court exercises its discretion and declines to impose a bond. *See, e.g.,*

12    *East Bay Sanctuary Covenant v. Trump*, 349 F.3d 838, 868-69 (N.D. Cal. 2018) (granting

13    nationwide injunction and waiving bond).

14    <center>**CONCLUSION**</center>

15      For the reasons set forth in this Order, the Court GRANTS Plaintiffs' motion. Secretary

16    Noem, Acting Director Lyons, and Acting Field Director Becerra, as well as their officers, agents,

17    servants, employees, attorneys, and all other who are in active concert or participation with them

18    are HEREBY ENJOINED:

19      from arresting and incarcerating any of the named Plaintiffs in these cases and similarly

20    situated individuals nationwide pending resolution of these proceedings;

21      from transferring any of the named Plaintiffs in these cases and similarly situated

22    individuals nationwide from outside the jurisdiction of their residence pending the resolution of

23    these proceedings;

24      from imposing any adverse legal effect on any named Plaintiffs in these cases and

25    similarly situated individuals nationwide that otherwise may be caused by the termination of their

26    SEVIS record; and

27      from reversing the reinstatement of the SEVIS record of the Plaintiffs in these cases and

28    similarly situated individuals nationwide who are maintaining status under 8 C.F.R. section

214.2(f)(5)(i) for reasons not set forth in 8 Code of Federal Regulations section 214.1 without further showing and approval by the Court.

## CONCLUSION

For the reasons set forth herein, the Court GRANTS Plaintiffs' motions. The parties shall appear for initial case management conferences on August 1, 2025 at 9:00 a.m. and shall file their joint case management conference statements by July 25, 2025.

**IT IS SO ORDERED.**

Dated: May 22, 2025

_____
JEFFREY S. WHITE
United States District Judge